

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-18-2008

# USA v. Holyfield

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1250

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Holyfield" (2008). *2008 Decisions.* Paper 1009.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1009

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1250
_____

UNITED STATES OF AMERICA

vs.

CEDANO HOLYFIELD

Appellant.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 04-cr-00035-1)
District Judge:  The Honorable Thomas M. Hardiman

_____

ARGUED  November 1, 2007
Panel Rehearing Granted May 27, 2008
SUBMITTED June 16, 2008

BEFORE: RENDELL, WEIS, and NYGAARD, Circuit Judges.

(Filed : June 18, 2008)

Karen S. Gerlach, Esq.
Renee Pietropaolo, Esq.(Argued)
Office of the Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
        Counsel for Appellant

Robert L. Eberhardt, Esq.
Laura S. Irwin, Esq. (Argued)
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
        Counsel for Appellee

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Cedano Holyfield pleaded guilty to various criminal charges stemming from a drug sale. His plea was conditional, retaining the right to appeal the following issue: "Whether the District Court erred in refusing to suppress the evidence seized from the car in which he was a passenger or from his person." Because this opinion carries no precedential value, we write only for the parties who know the facts. Hence, we will refer to only such facts as are necessary and as they become germane to our conclusions. We will affirm.

Holyfield raises three arguments on appeal: first, that what began as a *Terry*-stop escalated into a *de facto* arrest for which probable cause was lacking; second, that there was no probable cause for the *Terry*-stop in the first place; and finally, that because his stop and arrest violated the Fourth Amendment to the Constitution, all the evidence thereby gained should have been suppressed by the District Court.

We hold that the District Court correctly decided that the police had sufficient information to justify the investigatory stop. The District Court concluded that, "[i]n light

of [the detective's] personal knowledge of Harris' drug-trafficking history, the dubious nature of her car trouble, and Holyfield's conduct, the reasonable observer sitting in [the detective's] position would conclude that 'criminal activity may be afoot.' Accordingly, [the detective] was justified in ordering the take-down team to enter the gas station." District Court opinion at A6 (citation omitted). We agree. The totality of the circumstances here show that the detectives did possess reasonable cause to believe that criminal activity might be happening.

The incident took place when Pittsburgh Police Detective Covington was conducting surveillance of Lakeesha Harris in the parking lot of a Sunoco gas station. Convington was well acquainted with Ms. Harris, having personally arrested her several times and having knowledge that she had been engaged in drug activity. Harris was sitting in the driver's seat of her vehicle, which was parked with the hood up. Covington was in an unmarked car, parked a car-length or more from Harris' car. Four other officers were also parked in two squad cars a short distance from the station.

Covington watched Harris for approximately 45 minutes during which time she remained in her vehicle but made several calls on her cell phone. During this time, no one approached the vehicle to talk to Harris. Then, Holyfield pulled into the Sunoco parking lot. Holyfield was accompanied by one passenger. Holyfield parked his car and walked toward Harris' car. Covington observed large bulges in each of Holyfield's pockets. Holyfield then got into the passenger side of Harris' vehicle and engaged in a

brief conversation with her. Holyfield next reached into his pocket with his left hand and pulled out a large plastic bag. Believing that a drug deal was taking place, Covington called in assistance from the other officers nearby.

Although Holyfield maintains that neither he nor Harris acted "nervous or evasive," their actions speak otherwise. Detective Covington saw bulges in Holyfield's clothing that could suggest that he was carrying drugs. Although, "bulges" themselves in someone's pants may not create a reasonable suspicion, that fact may be considered in conjunction with other factors when viewing the totality of the circumstances. Holyfield threw the bag of drugs into the back seat of the vehicle as officers approached, left the vehicle and attempted to flee. Detective Covington was accompanied by four other officers when he confronted Harris and Holyfield, and there is no evidence that their visibility of these events was obstructed or inhibited, indeed it was in the middle of the day.

Police officers may rely on their own experience and specialized training to draw inferences from, and make deductions about the cumulative information known to them that might well elude an untrained person. When viewed through the prism of these officers' experience, the totality of the circumstances raised reasonable suspicion that the Appellant was engaging in criminal activity. We find no error in the District Court's conclusion.

Next, we turn to Holyfield's argument that the police officers' actions in detaining him amounted to a *de facto* arrest for which they lacked probable cause. In considering whether a stop is so minimally intrusive as to be justifiable on reasonable suspicion, a court must consider the duration of the stop, the law enforcement purposes justifying the stop, whether the police diligently sought to carry out those purposes given the circumstances, and alternative means by which the police could have served their purposes. The encounter at issue here took place in an open area, during daylight hours. The record does not show that police blocked Harris' car (in which Holyfield sat as a passenger). The record only indicates that other officers arrived in their vehicles. No direct physical force was used against Holyfield, nor does the fact that the police officers had their guns drawn converts this stop into a *de facto* arrest.

There is nothing in the record to indicate that the police delayed in acting, or detained Holyfield long enough to raise a question whether the duration of *Terry*-stop was excessive. Indeed, there is no indication that Holyfield was detained for any longer than was necessary to allow the officers to perform a careful check to satisfy themselves that there was no danger from accessible weapons and to confirm or dispel their suspicions. Moreover, only an insignificant period of time elapsed between the initial stop of the car and the discovery of contraband. We hold that the District Court correctly concluded that a reasonable person, standing in Holyfield's shoes, would have understood that he was being briefly detained for inquiry and investigation, and was not under arrest.

As a final argument, Holyfield argues that the police lacked probable cause to arrest him. This argument is meritless. The officers possessed a reasonable suspicion of criminal activity sufficient to justify a *Terry*-stop of Holyfield. After executing this investigatory stop, the officers had probable cause to arrest Holyfield based on Harris' questionable behavior; the bulges in Holyfield's pockets, Holyfield's behavior in approaching Harris' car (not acting like he was there to help with her car trouble, but proceeding directly into the passenger seat), Holyfield's removal of the bag from his pocket, and then – as the officers approached – throwing the bag into the back seat, Harris' fleeing the scene, and Officer Epler's plain view observation of the crack cocaine in the back seat of the car.

There is ample evidence here to support the District Court's order denying Holyfield's motion to suppress. We will affirm the District Court's order.


RENDELL, <u>Circuit Judge</u>, dissenting.

I respectfully disagree with the majority's reasoning that the initial stop here was lawful because the officers had a "reasonable, articulable suspicion that criminal activity [was] afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). I suggest the facts do not support that finding.

The time of Harris's flight and the time of Holyfield's throwing the bag into the backseat are unclear, but both appear to have occurred after the police had descended on

the scene, exiting two cars, with at least one gun drawn, not before the police acted. This conduct did not give the police reason to act; rather, the conduct resulted from the police activity.

The reference to Harris's "drug-trafficking history" misstates the paltry record on this point. Detective Covington's only testimony on the issue was that he knew that Harris had a "drug history" and that he had arrested her approximately three times for unspecified misconduct. (App. 102.) The testimony reveals nothing more.

I believe that a reasonable officer could just as easily conclude that Holyfield was bringing Harris her lunch. (I note that I do not fault Harris for making calls rather than looking under the hood and attempting to fix her car. I would probably have been sitting in the car, just like her, awaiting some assistance.) The facts fall far short of providing a reasonable, articulable suspicion of criminal activity. I would REVERSE the denial of the suppression motion and REMAND.

_____